**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**HATTIESBURG DIVISION**

**GREG WAMBLE, CLASS REPRESENTATIVE**
**DOES 1-50; Individually and on behalf of all**
**others similarly situated**                                    **PLAINTIFFS**

**VERSUS**                          **CIVIL ACTION NO. 2:09cv103KS-MTP**

**COUNTY OF JONES; SHERIFF ALEX HODGE, In His**
**Individual and Official Capacity, MISSISSIPPI DEPARTMENT OF**
**PUBLIC SAFETY; MISSISSIPPI HIGHWAY PATROL; MHP**
**OFFICER  JERRY MERRILL, in his Individual and Official Capacity;**
**JONES COUNTY SHERIFF'S DEPUTIES DOES 1-50; MISSISSIPPI**
**HIGHWAY PATROL DEPUTIES DOES 1-50; CITY OF ELLISVILLE**
**POLICE OFFICER DOES 1-50**                                    **DEFENDANTS**

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on a Motion to Dismiss **[#66]** filed on behalf of

defendants Mississippi Department of Public Safety ("MDPS"), the Mississippi Highway

Safety Patrol ("MHSP"), and Jerry Merrill in his official capacity( collectively, the "State

Defendants"), and on a Motion for Summary Judgment filed on behalf of Jerry Merrill, in

his individual capacity **[#68]**, and on a Motion for Summary Judgment filed on behalf of

Jones County, Mississippi and Sheriff Alex Hodge **[#64]**.  The Court, having reviewed

the motions, the response, the briefs of counsel, the pleadings and exhibits on file, and

being otherwise fully advised in the premises, finds that the motions are well taken and

should be granted.  The Court finds specifically as follows:

## BACKGROUND

This is a civil rights action in which the Plaintiff, Greg Wamble, challenges the constitutionality of Jones County's alleged, unofficial policy or custom of strip-searching pre-trial detainees at the Jones County Adult Detention Facility and using "chill rooms" to discipline non-compliant detainees. Wamble seeks to certify a class comprised of persons who have been and will be subjected to these alleged practices. On behalf of this putative class, he seeks a declaration that Jones County's alleged strip-search and chill room policies/customs are unconstitutional and an injunction barring Jones County from continuing to implement these alleged policies/customs. He also seeks compensatory and punitive damages against all Defendants based on the alleged strip-searches to which he was subjected and his alleged placement in a "chill room." Wamble brings claims under 42 U.S.C. § 1983 for alleged violations of his Fourth and Fourteenth Amendment rights.

On June 19, 2008, at approximately 7:50 p.m., Wamble was pulled over by Defendant Merrill, who was an MHSP officer, for speeding on Interstate Highway 59 in Jones County. Merrill ordered Wamble to step out of his vehicle, which Wamble did. Wamble alleges that Merrill then "commanded him without any reasonable basis to lean against the car and spread his legs[.]" He further alleges that "[w]ithout reasonable suspicion or cause, Officer Merrill aggressively cuffed [him] and proceeded to conduct an unlawful search of his vehicle[.]" Merrill put Wamble in his squad car and transported him to the Jones County adult Detention Center. Wamble alleges that Merrill informed him that he was being arrested merely for speeding and having an expired license. However, the Booking Sheet shows he was charged with speeding,

disorderly conduct, driving with an expired driver licenses and simple assault on a police officer.

During the booking process, Wamble was walked to the medical room where he was to undergo a search. Wamble allegedly refused to comply with requests of the deputies or to assist with the search. Wamble asserts that "[u]pon his refusal to consent to the invasive body cavity search, five officers, including Officer Merrill, assembled around [him] and informed him that the search would occur and that such searches were conducted on everyone who came to the jail regardless of the charges or cause for arrest." At that point, all of his clothes were removed by the deputies, and at some point, Wamble stood up, then fell back to the floor, catching himself right before impact.

Subsequently, Wamble "was [allegedly] commanded to get up, but upon being unable to do so because of his pain, the officers rolled him onto a sheet and dragged him dressed solely in his underwear to a chill room." It appears that Wamble does not allege that Merrill was involved in moving him to the chill room. Once in the "chill room," Wamble was allegedly "provided with neither clothing . . . or with blankets or bedding[.]"

Wamble asserts that he then requested an ambulance, but that he was "subjected to the conditions of the chill room for four hours before any ambulance personnel were summoned." Paramedics came to the jail and transported Wamble to the local hospital. After an hour or two stay, he was released. Once back at the jail Wamble walked on his own to the booking area. Shortly thereafter, at approximately 4:45 a.m., he bonded out.

Wamble contends that on June 24, 2008, he met with Jones County Sheriff Alex

Hodge, "to discuss the defendants' policy, custom and practice of strip searches[.]" According to Wamble, Sheriff Hodge "admitted that the policy, custom and practice of strip searches was applied to all pre-arraignment detainees, regardless of the nature of the charges and without regard to consideration of whether there is a reasonable suspicion that the detainee may have weapons or contraband." Wamble claims that Sheriff Hodge is "personally responsible for the promulgation and continuation of the strip search policy, practice and custom[.]"

Wamble alleges that the "defendants" have a "policy, practice and custom of subjecting pre-arraignment detainees . . . to strip and visual body cavity searches without having . . . a reasonable suspicion that the search will be productive of contraband or weapons." He also avers that "defendants have a policy, practice and custom of utilizing confinement in chill rooms as punishment for non-violent, non-suicidal, and non-destructive detainees who are dubbed 'non-compliant.'"

Wamble asserts two causes of action pursuant to 42 U.S.C. § 1983. First, he asserts a cause of action for violations of his Fourth and Fourteenth Amendment rights based on the alleged strip-searches that he was allegedly forced to undergo. Second, he asserts a cause of action for violations of his Fourth and Fourteenth Amendment rights based on the Defendants' alleged use of a "chill room" during his detention at the Jones County Adult Detention Facility.

The State Defendants have filed the instant motion pursuant to Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure to dismiss for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted, respectively. MDPS and MHSP argue that they are entitled to the immunity provided by the Eleventh

Amendment to the Constitution of the United States as against all of Wamble's claims and that Wamble lacks standing to pursue his claims for injunctive relief against them. Merrill argues that Wamble's claims against him in his official capacity are moot. Merrill also filed a motion for summary judgment on Wamble's individual capacity claims against him on the basis of qualified immunity.

## LAW AND ANALYSIS

A Rule 12(b)(1) motion attacks the court's jurisdiction to hear and to decide any issues in the case and therefore the court must address that at any time during the pendency of the litigation that is asserted, or even upon its own motion. *See Williamson v. Tucker*, 645 F. 2d 404 (5th Cir. 1981). It is well settled that on a 12(b)(1) motion the court may go outside the pleadings and consider additional facts, whether contested or not and may even resolve issues of contested facts.

If, however, the court limits its review to the face of the pleadings, the safeguards under Rule 12(b)(6) apply. Dismissal pursuant to Rule 12(b)(6) is appropriate if a party fails to state a claim under which relief can be granted. The allegation that the complaint must be accepted is true when the court considers whether the plaintiff has stated a cause of action. *See Cramer v. Skinner*, 931 F. 2d 1020 (5th Cir. 1991)(*cert. denied*, 60 U.S.L.W. 3057, 112 S. Ct. 298, 116 L. Ed. 2d 242 (1991)). Only the complaint and allegations contained therein are to be considered in reaching a decision on a defendant's Rule 12(b)(6) motion to dismiss.

The complaint should not be dismissed unless it appears beyond doubt that the plaintiffs can prove no set of facts in support of his or her claims which would entitle him

or her to relief.  While a complaint need not contain detailed factual allegations to survive a 12(b)(6) motion, the United States Supreme court has held that a plaintiff's "obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atlantic Corp. v. Twombly*,  550 U.S. 540, 127 S.Ct. 1955, 1964-65, 167 L.Ed.2d 929, 940 (2007) (other citations omitted).


**State Defendants and the Eleventh Amendment**

The party seeking to assert federal jurisdiction bears the burden of proving that subject matter jurisdiction exists.  *See, e.g., Howery v. Allstate Ins. Co.*, 243 F.3d 912, 919 (5th Cir. 2001).  The State Defendants assert that Wamble cannot carry that burden with respect to MDPS and MHSP, since the Eleventh Amendment bars all of the requested relief against them.  "The Eleventh Amendment prohibits the citizens from bringing suit against the state unless the state waives its immunity."  *Ganther v. Ingle*, 75 F.3d 207, 209 (5th Cir. 1996) (quoting *Ex Parte Young*, 209 U.S. 123, 149, 28 S. Ct. 441, 449-50, 52 L. Ed. 714, 725 (1908)).  The Eleventh Amendment to the United States Constitution provides;

> The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

While the language of the Amendment does not specifically address suits against the State by its own citizens, the Supreme Court has "consistently held that an unconsenting State is immune from suits brought in federal courts by her own citizens

as well as citizens of another State." *Edelman v. Jordan*, 415 U.S. 651, 662-63, 94

S.Ct. 1347, 39 L.Ed.2d 662 (1974).

Further, "[i]t is also well established that even though a State is not named a

party to the action, the suit may nonetheless be barred by the Eleventh Amendment."

*Id.* "Thus the rule has evolved that a suit by private parties seeking to impose a liability

which must be paid from public funds in the state treasury is barred by the Eleventh

Amendment." *Edelman*, 415 U.S. at 663. Additionally, the "jurisdictional bar applies

regardless of the nature of the relief sought." *Pennhurst State School & Hospital v.*

*Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984); *Puerto Rico*

*Aqueduct*, 506 U.S. 146; accord *Clay v. Texas Women's Univ.*, 728 F.2d 714, 716 (5th

Cir. 1984) ("[T]he Supreme Court has held that states and state agencies are . . .

immune as entities from suits for prospective injunctive relief.") (citing *Alabama v. Pugh*,

438 U.S. 781,782 (1978) (per curiam) ("There can be no doubt, however, that suit

against the State [of Alabama]. . . is barred by the Eleventh Amendment[.]")).

"The Eleventh Amendment bars a suit against state officials when the 'state is

the real, substantial party in interest.'" *Pennhurst*, 465 U.S. at 101 (other citations

omitted). "Federal claims against state employees in their official capacities are the

equivalent of suits against the state." *Ganther v. Ingle*, 75 F.3d 207, 209 (5th Cir. 1996)

(quoting *Monell v. New York City Department of Social Services*, 436 U.S. 658, 690,

note 55, 98 S. Ct. 2018, (1978)). As the Supreme Court pointed out in *Ford Motor Co.*

*v. Department of Treasury*, 323 U.S. 459, 65 S.Ct. 347, 89 L.Ed. 389 (1945);

> [W]hen the action is in essence one for the recovery of money from the
> state, the state is the real, substantial party in interest and is entitled to
> invoke its sovereign immunity from suit even though individual officials are

nominal defendants.

323 U.S. at 464.

"Thus, '[t]he general rule is that relief sought nominally against an officer is in fact against the sovereign if the decree would operate against the latter.'" *Pennhurst,* 465 U.S. at 101, (citing, *Hawaii v. Gordon*, 373 U.S. 57, 58, 83 S.Ct. 1052, 10 L.Ed.2d 191 (1963) (*per curiam*)). "And, as when the State itself is named as the defendant, a suit against state officials that is in fact a suit against the State is barred regardless of whether it seeks damages or injunctive relief." *Pennhurst*, 465 U.S. at 101-102, (citing, *Cory v. White*, 457 U.S. 85, 91, 102 S.Ct. 2325, 72 L.Ed.2d 694 (1982)).

"[N]either pendent jurisdiction nor any other basis of jurisdiction may override the Eleventh Amendment. A federal court must examine each claim in a case to see if the court's jurisdiction over that claim is barred by the Eleventh Amendment." *Pennhurst*, 465 U.S. at 121. "It may be that applying the Eleventh Amendment to pendent claims results in federal claims being brought in state court, or in bifurcation of claims. That is not uncommon in this area. Under *Edelman v. Jordan, supra*, a suit against state officials for retroactive monetary relief, whether based on federal or state law, must be brought in state court." *Pennhurst,* 465 at 122.

The Fifth Circuit has held that whether an agency can be determined to be an appropriate entity which may take advantage of the grant of immunity set forth in the Eleventh Amendment "turns on the entity's (1) status under state statutes and case law, (2) funding, (3) local autonomy, (4) concern with local or state wide problems, (5) ability to sue in its own name, and (6) right to hold and use property." *Champagne v. Jefferson Parish Sheriff's Office*, 188 F.3d 312, 313 (5th Cir. 1999). Further, "the most

-8-

significant factor in assessing an entity's status is whether a judgment against it will be paid with state funds."  *Id.* at 314, (quoting *McDonald v. Board of Mississippi Levy Commissioners*, 832 F.2d 901, 907 (5th Cir. 1987)).

It has been held numerous times that both MDPS and MHSP are arms of the state.  *E.g., Brown v. Simpson*, 2009 WL 2449898, at *1 n. 1 (N.D. Miss. Aug. 7, 2009) (Pepper, J.) (finding that "there is no question that the Mississippi Department of Public Safety is an arm of the State"); *King v. Mississippi Highway Patrol*, 827 F. Supp. 402, 403-04 (S.D. Miss. 1993) (Lee, J.) (finding that Mississippi Highway Safety Patrol was an arm of the state and thus entitled to Eleventh Amendment immunity).

Furthermore, the State of Mississippi has not waived its sovereign immunity in the present context. *See McGarry v. Univ. of Mississippi Medical Center*, 355 Fed. App'x. 853, 856 (5th Cir. 2009) (noting "that the state of Mississippi expressly preserved its sovereign immunity to suit in federal court when it enacted the Mississippi Tort Claims Act" (citing Miss. Code. Ann. § 11-46-5(4) ("Nothing contained in this chapter shall be construed to waive the immunity of the state from suit in federal courts . . . .")).

The only way the Eleventh Amendment bar may be overcome is by a demonstration that a suit falls within the exception carved out by the United States Supreme Court in *Ex parte Young*, 209 U.S. 123 (1908).  The *Ex parte Young* doctrine is a "narrow exception."  *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 76 (1996). Specifically, *Ex parte Young* "created an exception to Eleventh Amendment immunity for claims for prospective relief against state officials who have been sued in their official capacities."  *Nelson v. Univ. of Texas at Dallas*, 535 F.3d 318, 320 (5th Cir. 2008); *see Green*, 474 U.S. at 68 (stating that under the *Ex Parte Young* doctrine,

"federal courts [are allowed to] . . . grant[] prospective injunctive relief to prevent a continuing violation of federal law").

The *Ex Parte Young* doctrine does not apply to states or state agencies becasue "the doctrine holds that acts by state officials which are contrary to federal law cannot have been authorized or be ratified by the state; and suits seeking to enjoin such wrongful and unauthorized acts are not suits against the state and a federal court's injunction against such wrongful acts is not a judgment against the state itself." *Saltz v. Tennessee Dept. of Empl. Sec.*, 976 F.2d 966, 968 (5th Cir. 1992). Accordingly, in order to come within the *Ex parte Young* exception to the Eleventh Amendment, a plaintiff's "suit must be brought against individual persons in their official capacities as agents of the state and the relief sought must be declaratory or injunctive in nature and prospective in effect." *Id.* (footnote omitted); accord *Sullivan v. Univ. of Miss. Med.* Ctr., 617 F. Supp. 554, 557 (S.D. Miss. 1985) (Barbour, J.) ("[W]hile prospective injunctive relief is not prohibited by the Eleventh Amendment, the relief sought must be against a specific named public official and not the state or one of its agencies in their own capacity." (footnotes omitted)).

Wamble seeks declaratory and injunctive relief against, as well as damages from, MDPS and MHSP. However, he does not even attempt to rebut the argument of MDPS and MHSP that the Eleventh Amendment precludes the granting of any relief against a state agency. Wamble's claims for damages against MDPS and MHSP are clearly barred by the Eleventh Amendment. *See, e.g., Edelman v. Jordan*, 415 U.S. at 663 ("a suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment"); *Omobude v.*

*Mississippi Dept. of Finance and Admin.*, 2011 WL 1532185, at *2 (S.D. Miss. Apr. 21, 2011) (Lee, J.) ("To the extent plaintiff seeks money damages under § 1983, the defendants, in their official capacity, have Eleventh Amendment immunity." (citation omitted)); *Washington v. Jackson State Univ.*, 532 F. Supp. 2d 804, 814 (S.D. Miss. 2006) (Wingate, J.) (holding that plaintiff's claim for damages against state board of trustees and state university was barred by the Eleventh Amendment).

MDPS and MHSP are likewise immune from Wamble's claims for declaratory and injunctive relief. Although the *Ex Parte Young* doctrine allows plaintiffs to avoid the Eleventh Amendment bar and seek prospective injunctive relief against state officials, the doctrine does not apply to suits that seek prospective injunctive relief against states or state agencies such as MDPS or MHSP. Accordingly, all of Wamble's claims against MDPS and MHSP for declaratory, injunctive and monetary relief are barred by the Eleventh Amendment. *See McGarry*, 355 Fed. App'x at 856-57 (holding that plaintiff's claims were barred by the Eleventh Amendment because she sued the University of Mississippi rather than a state official in his official capacity). For these reasons, MDPS and MHSP are entitled to Eleventh Amendment immunity as to all of Wamble's claims, and the Court finds that their Motion to Dismiss should be granted because it lacks subject matter jurisdiction over the claims asserted against them.


**Official Capacity Claims Against Merrill**

As to Wamble's claims against Merrill in his official capacity, he (Merrill) argues they are moot since he is no longer employed as a Trooper with MHSP. Wamble does not address Merrill's argument, as it is well established that a former state official or

employee may not be sued in his or her official capacity. *See, e.g., Thompson v. Connick*, 553 F.3d 836, 869 (5th Cir. 2008), overruled on other grounds by *Connick v. Thompson*, 131 S.Ct. 1350 (2011) ("Because it is undisputed that Connick, Dubelier, and Williams are no longer employed at the DA's Office, their official capacities are non-existent, and they should not have been named in the judgment."); *Dye v. Office of Racing Commission*, 2011 WL 2144485, at *1 (E.D. Mich. May 31, 2011) (dismissing claims against former state official on the basis of mootness); *Brown v. Lieutenant Governor's Office on Aging*, 697 F. Supp. 2d 632, 634, 639-40 (D.S.C.2010) (holding that "the claims for injunctive relief ... against [individual defendant] in her official capacity [are] moot because [she] is no longer employed by the employer"). Because Merrill is not currently employed by MHSP, Wamble's claims against him in his official capacity are moot and shall be dismissed.

**Individual Capacity Claims Against Merrill**

Counts I and II of Wamble's Complaint seek to impose liability on Jones County and Jones County Sheriff Alex Hodge for the "policies, practices, and customs" of Jones County regarding strip-searches and the utilization of "chill rooms." However, Wamble is also suing Merrill in his individual capacity for damages. Apparently, Wamble's use of "custom or policy" terminology derives from *Monell v. New York Department of Social Services*, 436 U.S. 658, (1978). *Monell* instructed that a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the

injury, that the government as an entity is responsible under § 1983. 436 U.S. at 694. *Monell* expressly limited its holding "to local government units which are not considered part of the State for Eleventh Amendment purposes." *Id.* at 690 n. 54.

A *Monell* claim asserted against a municipality or county based on an unconstitutional policy or custom is fundamentally distinct from a claim against a public official in his individual capacity for a constitutional violation. The inquiries into whether a local government entity, on the one hand, and a public official, on the other, may be held liable for a violation of a plaintiff's constitutional rights are completely different. *See, Hare v. City of Corinth*, 74 F.3d 633, 649 (5th Cir. 1996) (noting the difference between "the existence of a constitutional violation simpliciter and a municipality's liability for that violation"); *see also Scott v. Moore*, 114 F.3d 51, 54 (5th Cir. 1997) ("*Hare* requires that we separate the inquiry pertinent to the episodic act or omission ('the existence of a constitutional violation simpliciter') from that pertinent to the custom, rule, or policy that is alleged to have permitted the act ('a municipality's liability for that violation')").

The main difference between the two types of claims is that individual defendants may assert the defense of qualified immunity, while municipalities and counties may not. *E.g., Rhodes v. City of Arlington*, 215 Fed. App'x 329, 330 (5th Cir. 2007) (stating that "a municipality is not entitled to qualified immunity based vicariously on qualified immunity of its officers, agents, or employees").

In this case, Wamble has chosen to plead a policy/custom claim against the Defendants, including Merrill. He has failed to plead a claim for a "constitutional violation simpliciter" against Merrill in his individual capacity. To properly have asserted

a constitutional violation simpliciter in this matter, he presumably would have also named as Defendants in this action, the Jones County employees who conducted the alleged strip-search and allegedly placed him in a "chill room."

Wamble's *Monell* claim against Jones County and Sheriff Hodge is simply not cognizable against Merrill because there is no allegation in the Complaint suggesting that Merrill was responsible for developing or promulgating the policies or customs in question. Nor is there any allegation that he implemented these policies or customs. Clearly, such an allegation would be facially implausible, as Merrill was not employed by Jones County.

Wamble does not squarely address Merrill's contention that based on the allegations in the Complaint, he is improperly seeking to hold Merrill personally liable for the strip-search policies and/or customs of Jones County. He claims that Merrill was "aware of and actively implemented the illegal policies," despite the fact that Merrill was not an employee of Jones County. However, as pled by Wamble in his Complaint, such a claim is not viable under existing law. Accordingly, Wamble's policy/custom claims shall be dismissed to the extent they are being asserted against Merrill in his individual capacity.

Nevertheless, as an alternative to Wamble's argument of a constitutional violation simpliciter, Merrill has also presented a motion for summary judgment regarding his individual liability to Wamble for his participation in the alleged strip search based on qualified immunity. Of course, summary judgment is viewed in a broader light than a 12(b)(6) motion as the Federal Rules of Civil Procedure, Rule 56(c) authorizes summary judgment where "the pleadings, the discovery and disclosure materials on file,

and any affidavits, show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  FRCP 56(c); and *see Celotex Corporation v. Catrett*, 477 U.S. 317, 322, 91 L.Ed.2d 265, 106 S.Ct. 2548 (1986).  The existence of a material question of fact is itself a question of law that the district court is bound to consider before granting summary judgment.  *John v. State of La. (Bd. of T. for State C. & U.)*, 757 F.2d 698, 712 (5th Cir. 1985).

A Judge's function at the summary judgment stage is not himself to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.  There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party.  If the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 91 L.Ed.2d 202, 106 S.Ct. 2505 (1986).

Although Rule 56 is peculiarly adapted to the disposition of legal questions, it is not limited to that role.  *Professional Managers, Inc. v. Fawer, Brian, Hardy & Zatzkis*, 799 F.2d 218, 222 (5th Cir. 1986).  "The mere existence of a disputed factual issue, therefore, does not foreclose summary judgment.  The dispute must be genuine, and the facts must be material."  *Id.*  "With regard to 'materiality', only those disputes over facts that might affect the outcome of the lawsuit under the governing substantive law will preclude summary judgment."  *Phillips Oil Company v. OKC Corporation*, 812 F.2d 265, 272 (5th Cir. 1987).  Where "the summary judgment evidence establishes that one of the essential elements of the plaintiff's cause of action does not exist as a matter of law, . . . all other contested issues of fact are rendered immaterial.  *See Celotex*, 477 U.S. at 323, 106 S.Ct at 2552."  *Topalian v. Ehrman*, 954 F.2d 1125, 1138 (5th Cir.

1992).  In making its determinations of fact on a motion for summary judgment, the Court must view the evidence submitted by the parties in a light most favorable to the non-moving party.  *McPherson v. Rankin*, 736 F.2d 175, 178 (5th Cir. 1984).

The moving party has the duty to demonstrate the lack of a genuine issue of material fact and the appropriateness of judgment as a matter of law to prevail on his motion.  *Union Planters Nat. Leasing v. Woods*, 687 F.2d 117 (5th Cir. 1982).  The movant accomplishes this by informing the court of the basis of its motion, and by identifying portions of the record which highlight the absence of genuine factual issues.  *Topalian*, 954 F.2d at 1131.

"Rule 56 contemplates a shifting burden:  the nonmovant is under no obligation to respond unless the movant discharges [its] initial burden of demonstrating [entitlement to summary judgment]."  *John*, 757 F.2d at 708.  "Summary judgment cannot be supported solely on the ground that [plaintiff] failed to respond to defendants' motion for summary judgment," even in light of a Local Rule of the court mandating such for failure to respond to an opposed motion.  *Id.* at 709.

However, once a properly supported motion for summary judgment is presented, the nonmoving party must rebut with "significant probative" evidence.  *Ferguson v. National Broadcasting Co., Inc.*, 584 F.2d 111, 114 (5th Cir. 1978).  In other words, "the nonmoving litigant is required to bring forward 'significant probative evidence' demonstrating the existence of a triable issue of fact."  *In Re Municipal Bond Reporting Antitrust Lit.* , 672 F.2d 436, 440 (5th Cir. 1982).  To defend against a proper summary judgment motion, one may not rely on mere denial of material facts nor on unsworn allegations in the pleadings or arguments and assertions in briefs or legal memoranda.

The nonmoving party's response, by affidavit or otherwise, must set forth specific facts showing that there is a genuine issue for trial. Rule 56(e), Fed.R.Civ.P. *See also, Union Planters Nat. Leasing v. Woods*, 687 F.2d at 119.

While generally "'[t]he burden to discover a genuine issue of fact is not on [the] court,' (*Topalian* 954 F.2d at 1137), 'Rule 56 does not distinguish between documents merely filed and those singled out by counsel for special attention-the court must consider both before granting a summary judgment.'" *John*, 757 F.2d at 712 (quoting *Keiser v. Coliseum Properties, Inc.*, 614 F.2d 406, 410 (5th Cir. 1980)).

The Fifth Circuit has held that "government officials performing discretionary functions are protected from civil liability under the doctrine of qualified immunity if their conduct violates no 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Sorenson v. Ferrie*, 134 F.3d 325, 327 (5th Cir. 1998) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738, 73 L. Ed. 2d 396 (1982)).

Under the two step analysis[1] long  employed by the Fifth Circuit in reviewing claims wherein qualified immunity has been asserted, the Court must first determine "whether the plaintiff has asserted the violation of a clearly established constitutional right. If so, the court decides whether the defendant's conduct was objectively

---

[1]  The Supreme Court has held that the two-step analysis set forth in *Saucier v Katz*, 533 U.S. 194 (2001), and its predecessors, – which required a determination of whether the defendant's conduct violated a constitutional right before considering whether the defendant's conduct was objectively reasonable in light of clearly established law – is no longer "mandatory." *Pearson v. Callahan, 555 U.S. 223, 236 (2009).* "Instead, lower courts are 'permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand.'" *Collier v. Montgomery*, 569 F.3d 214, 217 (5th Cir. 2009) (quoting *Pearson*, 555 U.S. at 236). "The Court noted, however, that the *Saucier* formulation often is the appropriate analytical sequence." *Collier*, 569 F.3d at 217-18 (citing *Pearson*, 555 U.S. at 236).

reasonable." *Sorenson*, 134 F.3d at 327 *(*quoting *Coleman v. Houston Indep. Sch. Dist.,* 113 F.3d 528, 533 (5th Cir. 1997) (applying the two-prong test of *Siegert v. Gilley*, 500 U.S. 226, 231-32, 111 S. Ct. 1789, 1792-93, 114 L. Ed. 2d 277 (1991)). The first step "is subdivided into three questions: (1) whether a constitutional violation is alleged; (2) whether the law regarding the alleged violation was clearly established at the time of the alleged violation; and (3) whether the record shows that a violation occurred." *Dudley v. Angel*, 209 F.3d 460, 462 *(*quoting *Kerr v.Lyford,* 171 F.3d 330, 339 (5th Cir. 1999) *(*citing *Rich v. Dollar*, 841 F.2d 1558, 1563 (11th Cir. 1988)).

"Although [qualified immunity is] nominally an affirmative defense, the plaintiff has the burden to negate the defense once properly raised." *Brumfield v. Hollins*, 551 F.3d 322, 326-27 (5th Cir. 2008); *see Pierce v. Smith*, 117 F.3d 866, 872 (5th Cir.1997) ("We do not require that an official demonstrate that he did not violate clearly established federal rights; our precedent places that burden upon plaintiffs." (internal quotation marks and citation omitted)). "The defendant official must initially plead his good faith and establish that he was acting within the scope of his discretionary authority." *Salas v. Carpenter*, 980 F.2d 299, 306 (5th Cir.1992) (citations omitted). "Once the defendant has done so, the burden shifts to the plaintiff to rebut this defense by establishing that the official's allegedly wrongful conduct violated clearly established law." *Id.* The plaintiff's burden of negating the defendant's qualified immunity defense is a heavy one. *See, e.g., Brown v. Lyford*, 243 F.3d 185, 190, n. 7 (5th Cir. 2001) (stating that "[a] plaintiff must clear a significant hurdle to defeat qualified immunity"). "Abrogation of qualified immunity is properly the exception, not the rule." *Foster v. City of Lake Jackson*, 28 F.3d 425, 428 (5th Cir. 1994) (citation omitted).

To make a determination on the applicability of qualified immunity, "the court applies an objective standard based on the viewpoint of a reasonable official in light of the information then available to the defendant and the law that was clearly established at the time of the defendant's actions." *Freeman v. Gore*, 483 F.3d 404, 411 (5th Cir. 2007) (citations omitted); *see Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010) (stating that under the qualified immunity standard "[a]n official's actions must be judged in light of the circumstances that confronted him, without the benefit of hindsight." (citation omitted)). Moreover, "because qualified immunity turns only upon the objective reasonableness of the defendant's acts, a particular defendant's subjective state of mind has no bearing on whether that defendant is entitled to qualified immunity." *Thompson v. Upshur County*, 245 F.3d 447, 457 (5th Cir. 2001) (citation omitted).

A defendant's conduct is "objectively reasonable unless *all* reasonable officials in the defendant's circumstances would have then known that the defendant's conduct violated the United States Constitution[.]" *Id.* (emphasis in original, citations omitted). That is, "[i]f officers of reasonable competence could disagree as to whether the plaintiff's rights were violated, the officer's qualified immunity remains intact." *Tarver v. City of Edna*, 410 F.3d 745, 750 (5th Cir. 2005). The objective reasonableness "standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Mendenhall v. Riser*, 213 F.3d 226, 230 (5th Cir. 2000) (quoting *Malley v. Briggs*, 475 U.S. 335, 343 (1986)). This means that "even law enforcement officials who reasonably but mistakenly commit a constitutional violation are entitled to immunity." *Glenn v. City of Tyler*, 242 F.3d 307, 312 -13 (5th Cir. 2001) (internal quotation marks and citation omitted).

A defendant's "conduct is . . . not objectively reasonable if it violates a clearly established right, because 'a reasonably competent public official should know the law governing his conduct.'" *Guillory v. Thomas*, 355 Fed. App'x 837, 840 (5th Cir. 2009) (quoting *Harlow*, 457 U.S. at 818-19). However, "an official does not lose qualified immunity merely because a certain right is clearly established in the abstract.*" Kinney v. Weaver*, 367 F.3d 337, 350 (5th Cir. 2004). "It is clearly established that the government may not deny due process or inflict cruel and unusual punishments, for example, but those abstract rules give officials little practical guidance as to the legality of particular conduct." *Id.* Instead, the law must be "clear in the more particularized sense that reasonable officials should be 'on notice that their conduct is unlawful.'" *Id.* (quoting *Saucier*, 533 U.S. at 206). Put another way, "the inquiry into whether [a] right[] [is] clearly established must be undertaken in light of the specific context of the case, not as a broad general proposition." *Martinez-Aguero v. Gonzalez*, 459 F.3d 618, 626 (5th Cir. 2006) (internal quotation marks and citation omitted).

"[T]here need not be commanding precedent that holds that the very action in question is unlawful; the unlawfulness need only be readily apparent from relevant precedent in sufficiently similar situations." *Brown v. Miller*, 519 F.3d 231, 237 (5th Cir. 2008) (internal quotation marks and citation omitted)). "The central concept is that of 'fair warning': The law can be clearly established 'despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights.'" *Kinney*, 367 F.3d at 350 (quoting *Hope v. Pelzer*, 536 U.S. 730, 740 (2002)).

To determine whether a right is clearly established, a court should look primarily to Fifth Circuit and Supreme Court case law. *See, e.g., Melear v. Spears*, 862 F.2d 1177, 1185 (5th Cir. 1989) (stating for the purpose of determining whether the law is clearly established, "Fifth Circuit and Supreme Court cases . . . will loom largest in our inquiries"); *Noyola v. Texas Dep't of Human Resources*, 846 F.2d 1021, 1026 (5th Cir. 1988) (affirming grant of qualified immunity where "[n]o Fifth Circuit case [at the time of the alleged violation] had found a first amendment violation of facts like these").

More recently, the Fifth Circuit has held that it is appropriate to take into consideration decisions from other circuits in deciding whether the law is clearly established, but only if there is no binding Supreme Court or Fifth Circuit precedent directly on point. *See McClendon v. City of Columbia*, 305 F.3d 314, 329 (5th Cir. 2002) ("[I]n the absence of directly controlling authority, a consensus of cases of persuasive authority might, under some circumstances, be sufficient to compel the conclusion that no reasonable officer could have believed that his or her actions were lawful." (internal quotation marks and citations omitted)).

"Whether an official's conduct was objectively reasonable is a question of law for the court, not a matter of fact for the jury." *Callahan*, 623 F.3d at 253(citing *Williams v. Bramer*, 180 F.3d 699, 703 (5th Cir. 1999)); accord *Mangieri v. Clifton*, 29 F.3d 1012, 1015-16 (5th Cir. 1994). Because the "'question is purely legal, . . . a court cannot avoid answering the question by framing it as factual.'" *Largent v. City of Dallas*, 1995 WL 10516, at *3 (5th Cir. Jan. 3, 1995) (quoting *Workman v. Jordan*, 958 F.2d 332, 336 (10th Cir. 1992)). A court should accept the plaintiff's version of the facts as true and decide whether under those facts, the defendant's conduct was objectively

unreasonable in light of clearly established law. *See Gonzales v. Dallas County*, 249 F.3d 406, 411 (5th Cir. 2001) (in qualified immunity cases "the public official must be prepared to concede the best view of the facts to the plaintiff and discuss only the legal issue").

On April 2, 2012, the United States Supreme Court held that under the Fourth Amendment, correctional officials may require arrested persons entering a detention facility to "undergo a close visual inspection while undressed," regardless of whether there is a reasonable suspicion that the arrestee has contraband or weapons, and regardless of the nature of the offense for which they were arrested. *Florence v. Board of Chosen Freeholders of County of Burlington*, 566 U.S. ----, 132 S.Ct. 1510, 1513 (2012). In so holding, the Court noted that "[t]he difficulties of operating a detention center must not be underestimated[.]" *Id.* at 1515 (citation omitted).

Further, it emphasized that "[m]aintaining safety and order at these institutions requires the expertise of correctional officials, who must have substantial discretion to devise reasonable solutions to the problems they face." *Id.* More specifically, the Court highlighted the importance of conducting searches at detention facilities: "Correctional officials have a significant interest in conducting a thorough search as a standard part of the intake process. The admission of inmates creates numerous risks for facility staff, for the existing detainee population, and for a new detainee himself or herself." *Id.* at 1518.

In *Florence*, the Petitioner had argued that the Court should recognize an exemption for detainees who "ha[ve] not been arrested for a serious crime or for any offense involving a weapon or drugs" and who do not "give officers a particular reason

-22-

to suspect them of hiding contraband." *Id.* at 1520. The Court rejected the Petitioner's position: "The record provides evidence that the seriousness of an offense is a poor predictor of who has contraband and that it would be difficult in practice to determine whether individual detainees fall within the proposed exemption." *Id.*; *see also id.* at 1522 ("The restrictions suggested by petitioner would limit the intrusion on the privacy of some detainees but at the risk of increased danger to everyone in the facility, including the less serious offenders themselves.).

As pointed out by Wamble, the Court's holding was limited to invasive searches "on any suspected offender who will be admitted to the general population" of a facility. *Id.* at 1522. The Court declined to address the issue of whether there should be an exception to the general rule enunciated in the case for detainees who will not be admitted to the general jail population. *See id.* ("This case does not require the Court to rule on the types of searches that would be reasonable in instances where, for example, a detainee will be held without assignment to the general jail population and without substantial contact with other detainees."); *see also id.* at 1523 (Roberts, J., concurring) ("The Court makes a persuasive case for the general applicability of the rule it announces. The Court is nonetheless wise to leave open the possibility of exceptions[.]"); *id.* at 1524 (Alito, J., concurring) ("It is important to note, however, that the Court does not hold that it is *always* reasonable to conduct a full strip search of an arrestee whose detention has not been reviewed by a judicial officer and who could be held in available facilities apart from the general population." (emphasis in original)). Thus, it is now an open question whether arrestees who are not going to placed with the general population of a jail may be subjected to a strip-search without reasonable

suspicion, consistent with the requirements of the Fourth Amendment.

Importantly, the Court's decision in *Florence* overruled Fifth Circuit precedent requiring reasonable suspicion of contraband and/or weapons for strip-searches of minor-offense arrestees. *See, e.g., Kelly v. Foti*, 77 F.3d 819, 821 (5th Cir. 1996) ("Jail officials may strip search a person arrested for a minor offense and detained pending the posting of bond only if they possess a reasonable suspicion that he is hiding weapons or contraband."); *Stewart v. Lubbock County*, 767 F.2d 153, 156-57 (5th Cir. 1985) ("Because Lubbock County's strip search policy was applied to minor offenders awaiting bond when no reasonable suspicion existed that they as a category of offenders or individually might possess weapons or contraband, . . . we find such searches unreasonable and the policy to be in violation of the Fourth Amendment.").

The holdings in these cases were based on the Supreme Court's decision in *Bell v. Wolfish*, 441 U.S. 520 (1979), where the Court articulated the following standard for determining the "reasonableness" of strip searches at detention facilities:

> The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application. In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted.

*Wolfish*, 441 U.S. at 559; *see Stewart*, 767 F.2d at 156-57 (citing the "balancing test of *Wolfish*" as the basis for its holding).

In light of *Florence*, it is abundantly clear now that the Fifth Circuit (and many other courts) misinterpreted *Wolfish* in holding that persons arrested for minor offenses may not be strip-searched, absent a reasonable suspicion that they are concealing

contraband or weapons on or in their body. *See Florence*, 132 S. Ct. at 1516 ("The Court's opinion in *Bell v. Wolfish*, . . . is the starting point for understanding how this framework applies to Fourth Amendment challenges."). Accordingly, Wamble may not rely on these cases to defeat Merrill's claim of qualified immunity.

In the wake of *Florence*, the central question is whether Merrill violated clearly established law by allegedly participating in the search of Wamble. Merrill argues that he could not have violated clearly established law because the *Florence* Court left "open the possibility of exceptions" to the blanket rule that newly arrested persons may be strip-searched without reasonable suspicion if they are going to be booked into the general population of a detention facility. *Florence*, 132 S. Ct. at 1523 (Roberts, J., concurring).

When there is an "open question" as to whether certain conduct is unconstitutional, the law cannot be considered clearly established. *See Mitchell v. Forsyth*, 472 U.S. 511, 535 (1985) (holding that defendant was entitled to qualified immunity because "[t]he decisive fact is not that Mitchell's position turned out to be incorrect", but that the question was open at the time he acted"); *Shepard v. Ripperger*, 57 Fed. App'x 270, 272 (8th Cir.2003) ("Because the legality of refusing to identify oneself to police is an open question, it is not clearly established law for the purpose of denying qualified immunity." (citations omitted)); *Polk v. District of Columbia*, 121 F. Supp. 2d 56, 70 -71 (D.D.C.,2000) ("In both *Davis v. Scherer* and *Mitchell v. Forsyth*, the Supreme Court's holdings that the law was not clearly established turned on the fact that there was an 'open question' whether the Constitution outlawed the conduct at issue." (citations omitted)).

Thus, "[g]iven the Supreme Court's express reservation of the question of whether" detainees who are not going to be held overnight in a cell with other inmates may be strip-searched without a reasonable suspicion, the "contours" of Wamble's right to be free from unreasonable searches are "not sufficiently clear that the unlawfulness" of the search to which he was subjected would be "apparent" to all reasonable officials. *Risbridger v. Connelly*, 275 F.3d 565, 572 (6th Cir. 2002) (holding that law was not clearly established); *see Anderson*, 483 U.S. at 640 (holding that a right is "clearly established" if its "contours . . . [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right").

Qualified immunity protects law enforcement officers from "bad guesses in gray areas" and ensures that they are liable only "for transgressing bright lines." *Waterman v. Batton*, 393 F.3d 471, 476 (4th Cir. 2005); *see Sorenson*, 134 F.3d at 328. ("[T]he case law must draw a bright line in order for the law to be classified as clearly established" for purposes of qualified immunity. (internal quotation marks and citation omitted)).

*Florence* erased any bright lines that previously existed in this area of Fourth Amendment law regarding searches in a detention facility. Now there is only a possibility that the search that was conducted on Wamble fits within an unrecognized exception to the general rule that any arrestee may be forced to submit to a stripsearch if he is going to be detained with the general jail population. Merrill should not be stripped of his qualified immunity from suit and damages based on such a possibility.

Wamble argues that *Florence* did not overrule existing Fifth Circuit precedent which held that strip-searching minor offenders without a reasonable suspicion that they

are concealing contraband or weapons violated the Fourth Amendment's proscription against unreasonable searches. Wamble is wrong. The Supreme Court in *Florence* fundamentally altered Fourth Amendment law and clearly overruled Fifth Circuit case law upon which he relies.

The key distinction for Fourth Amendment purposes is not between minor offenders and those charged with more serious offenses, but between arrestees who will be admitted into the general population of a detention facility and those who can be detained apart from the general population until they are able to post bond. However, contrary to Wamble's arguments, the Supreme Court did not hold that if there is no basis for reasonable suspicion, strip-searching an arrestee who will not be held with the general jail population constitutes a Fourth Amendment violation. Rather, the Court declined to address this question, "leav[ing] open the possibility of exceptions" to the "general applicability of the rule it announce[d]." *Florence*, 132 S.Ct. at 1523 (Roberts, J., concurring). The Court declared what was in-bounds (strip-searching all offenders who will be assigned to the general population); it did not purport to declare what was out-of-bounds. Because it is now unclear under what circumstances strip-searches not covered by *Florence* will be deemed illegal, Merrill could not have violated clearly established law.

Further, any argument that at the time he was strip-searched, the law was clearly established in the Fifth Circuit that a person arrested for a minor offense could not be strip-searched without reasonable suspicion would be unavailing because "[t]he nature of the law is always to move from unsettled to settled." *Santamorena v. Georgia Military College*, 147 F.3d 1337, 1342 n. 11 (11th Cir. 1998). It is possible for clearly established

law to be undermined by subsequent cases, such that the law becomes unclear.  *See id.*  ("Although one of our decisions may not be expressly overruled, later cases – at least Supreme Court cases – may bring its reasoning or holding into such doubt that the elements set out in the case are no longer clearly established for purposes of qualified immunity.").  That is exactly what has happened here.  Thus, Merrill should be accorded qualified immunity in this case.

Even if the Court were to conclude that it is somehow still clearly established that it is unlawful to strip-search a person who will not be held overnight and who has been arrested for a minor offense, in the absence of a reasonable belief that the person may carry weapons or contraband into the jail, it is not clearly established that conducting a strip-search without reasonable suspicion on a person charged with a crime of violence violates the Fourth Amendment.  It is beyond dispute that Wamble was charged with a simple assault on a police officer, a felony and a crime of violence.[2]  Given that it is incontrovertible that Wamble was charged with simple assault, a reasonable suspicion objectively existed to justify a strip-search.


**Claims Against Jones County and Sheriff Alex Hodge**

Jones County and Sheriff Hodge have also filed a motion for summary judgment.  Wamble has asserted claims against Jones County, Mississippi and Sheriff Alex Hodge for alleged violations of his Fourth and Fourteenth Amendment rights to the United States Constitution pursuant to the procedural vehicle of 42 U.S.C. §1983.

---

[2] MCA 97-3-7(1)

In order to hold Jones County and Sheriff Alex Hodge, in his official capacity, liable in this case, Wamble must prove that a policy, custom or practice of the County was the moving force behind a constitutional violation against him. *Monell v. Department of Social Services*, 436 U.S. at 692. Further, Jones County cannot be liable under § 1983 for acts which allegedly violated Wamble's constitutional rights unless the harmful acts proximately resulted from a policy, custom or practice which evidenced objective deliberate indifference to his constitutional rights. *Hare v. City of Corinth*, 135 F.3d 320 (5th Cir. 1998). In *Hare*, the Fifth Circuit held "the correct legal standard is not whether the jail officers knew or should have known," but whether they had gained actual knowledge…and responded with deliberate indifference." *Id.* at 324. Unless Wamble can offer proof of a genuine issue of material fact that a policy, custom or practice of Jones County, which was adopted or maintained with objective deliberate indifference, proximately caused a constitutional deprivation of his rights, then Jones County cannot have any liability whatsoever to him.

The Fifth Circuit discussed the standard to govern the imposition of municipal liability in § 1983 actions in *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc), aff'd per curiam on reh'g 739 F.2d 993 (5th Cir. 1984) (en banc):

> A municipality is liable under Section 1983 for a deprivation of rights protected by the Constitution or federal laws that is inflicted pursuant to official policy. Official policy is:
>
> > 1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policymaking authority;
> >
> > or

2.  A persistent widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy.  Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policymaking authority.  Actions of officers or employees of a municipality do not render the municipality liable under Section 1983 unless they execute official policy as above defined.

"The policy is that of the city, however, where it is made by an official under authority to do so given by the governing authority."  *Bennett v. Slidell*, 728 F.2d 762, 769 (5th Cir. 1984).  "Policymakers act in the place of the governing body in the area of their responsibilities; they are not supervised except as to the totality of their performance."  *Id.* at 769.

As stated previously, in order to find a municipality liable in a Section 1983 action, the constitutional deprivation must result from the implementation or execution of a policy statement, ordinance, regulation or decision officially adopted and promulgated by that body's officers.  This includes customs and usages which have become so persistent and widespread as to be permanent and well settled so as to constitute a custom or usage with a force of law.  *See Monell,* 436 U.S. at 690-92.

However, a municipality cannot be held liable under Section 1983 on a *respondeat superior* theory.  *Id.* at 690; and *Eugene v. Alief Indep. Sch. Dist.*, 65 F.3d 1299, 1303 (5th Cir. 1995).  The same is true of supervisory officials in that there must be some connection between the actions of the defendants and the alleged constitutional violations.  *See Baker v. Putnal*, 75 F.3d 190 (5th Cir. 1996); and *Hinshaw v. Doffer*, 785 F.2d 1260 (5th Cir. 1986).  "Supervisory officials may be liable only if: (i)

they affirmatively participate in acts that cause constitutional deprivation; or (ii) implement unconstitutional policies that causally result in plaintiff[s'] injury." *Baker*, 75 F.3d at 199, (quoting *Mouille v. City of Live Oak, Tex.*, 977 F.2d 924, 929 (5th Cir. 1992)).

The evidence reveals that the Jones County Sheriff's Department has in place extensive policies regarding the conduct and performance of deputies and searches of detainees. Hodge testified that with respect to searches, the Department acts in accordance with the Jones County Jail Policy and Procedure Manual. He also testified that, in conformity with that policy, searches of incoming detainees are conducted so that deputies are satisfied that the integrity and safety of the facility is not being compromised, both with respect to the employees and the inmates.

The inmate admission policy contained in the Jones County Jail Policies and Procedures Manual states that a Corrections Officer will, prior to the removal of handcuffs and other restraints, conduct a thorough pat search of all arrestees. For misdemeanor arrests, officers are to remove property from the arrestee and conduct a second pat search after booking.

For felony arrests, the arresting officer is to complete the Uniform Arrest Report and Jail booking record card. The officer is to remove property from the arrestee following the same procedures as for misdemeanor arrests, then fingerprint and photograph the arrestee. When it has been determined that the inmate will be detained beyond eight hours, the inmate is to be moved from a holding cell to the medical screening room where he/she will undress and undergo a medical screening. Hodge testified that the Jones County Sheriff's Department does not have a uniform strip

search policy that applies to every person who enters the jail, contrary to assertions by Wamble.

The jail policy regarding inmate searches states that it is the policy of the Jones County Jail that inmate and area searches shall be conducted.   According to the policy, these searches help uncover health and safety hazards and assist in the prevention of facility damages. The policy provides that searches of cells and frisk or pat down searches of the inmates should be conducted on a regular and irregular basis.  Strip searches should be conducted only when there is a possibility or a belief by the staff that contraband, stolen property, instrumentalities of a crime, evidence, or exigent circumstances are present.  The policy details each of these searches and clearly specifies that any invasive searches such as vaginal and anal cavity searches are to be conducted by medical staff only.

In opposition, Wamble argues that in a conversation with the Sheriff Hodge a few days after this incident, the Sheriff had provided him with a description of the Jones County Sheriff's Department's search policy which differed from that detailed in the Sheriff's deposition.  A transcript of this alleged conversation was provided as an exhibit in opposition of the Defendants' summary judgment motion.  This exhibit is not competent summary judgment evidence as it is not properly authenticated, nor have the statements which are attributed to Sheriff Hodge been reviewed, attested to or otherwise represented to be made by him under oath.  Without proper authentication, neither the tape nor the transcript cited by Wamble are proper summary judgment evidence.  Any document which cannot be used at trial is not competent summary judgment evidence.  Herein, the only admissible and relevant statement of Hodge is his

deposition testimony which was provided under oath.

Additionally, even if the earlier statements attributed to Hodge were competent summary judgment evidence, the statements would not preclude the appropriateness of summary judgment in favor of Jones County, Mississippi and Sheriff Hodge with respect to Wamble's Fourth Amendment claims. In this case, Wamble had been arrested and charged with speeding, disorderly conduct, driving with an expired license and simple assault on a police officer. He was brought to the detention facility and booked. As he was going to be placed with others ("general population") he was searched.

In his opposition to this motion for summary judgment, Wamble once again disputes the applicability of *Florence,* relying instead upon the case of *Stewart v. Lubbock County, Texas*, 767 F.3d 153 (5th Cir. 1985). Wamble argues that *Florence* did not become law until after the incident in question and therefore both the Jones County policy and the particular search he was subjected to were unconstitutional. However, as discussed extensively above, *Florence* was heard by the Supreme Court because there had been uncertainty within lower courts as to the scope of permissible searches of detainees arrested for misdemeanor offenses. *Florence* clarified that those lower courts which held strip searches for minor offenders unconstitutional were wrong. In light of the Supreme Court's ruling in *Florence*, there can be no doubt that Jones County's search policies are constitutional.

Wamble also claims that Jones County has a policy or practice of putting inmates into a "chill room", is not supported by the record. There is no such written policy and Hodge has steadfastly denied any practice. When asked about this in his deposition, Hodge testified that the entire jail stays pretty cold. He explained that "just like the

hospital or the emergency room or any – you know, most of them stay cold for purposes of air-borne pathogens. You know, the temperature is generally going to stay pretty cool." He went on to explain that contrary to the assertion that one room is kept cooler than others, the entire jail is set a uniform temperature. There is not one room that is warmer or colder than the other ones. The temperature of the entire facility — kitchen, cells, booking --- is uniformly set.

In addition to the fact Jones County, Mississippi cannot be liable for Wamble's Fourth Amendment claims, it also cannot be liable for his Eighth Amendment denial of medical care claim. In his opposition to summary judgment, Wamble claims there is substantial evidence showing that he was injured during the search and that the Defendants did not timely call an ambulance for him, but rather left him in a cold holding cell. However, the Wamble has not cited any record evidence which supports a finding of liability against the County for a delay/denial of medical care claim.

In order for Wamble to establish liability against the Defendants under 42 U.S.C. § 1983, he must prove that the Defendants acted with deliberate indifference towards his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 291, 50 L.Ed.2d. 251 (1976). To do so, he must show that the Defendants knew of a substantial risk of serious harm to him and "acted or failed to act with deliberate indifference to [his] needs." *Hare v. City of Corinth*, 135 F.3d. 320, 326 (5th Cir. 1998) (citing *Hare v. City Corinth*, 74 F. 3d. at 647-48). Without such proof, Wamble's §1983 claim cannot stand.

The Fifth Circuit has defined the degree of knowledge the Defendants must have in order to have liability under the deliberate indifference standard.

To establish deliberate indifference . . . the prisoner must show that the

defendants (1) were aware of facts from which an inference of *an excessive risk to the prisoner's health or safety* could be drawn and (2) that they *actually drew an inference* that such potential for harm existed. *See Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)(emphasis in original).

*Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998).  *See also Norton v. Dimazana*, M.D., 122 F.3d 286, 291 (5th Cir. 1997).

There is no factual basis for Wamble's allegations that the Defendants responded with deliberate indifference to any serious medical condition.  "Before one can be found to be deliberately indifferent, an injury must be obvious to the defendant." *Muslim v. Costello*, 70 F.3d 117, 117 (7th Cir. 1995) (citing *Anthony v. Dowdle*, 853 F.2d 741 (9th Cir. 1988).  The Defendants have testified that they were not aware of any serious medical need for which care was not provided as Wamble refused to state why he wanted an ambulance and was offered an examination by medical personnel at the jail.  However, these Defendants still took action to procure outside medical attention for Wamble, at his request.

As articulated in *Hare*, the concept of "serious medical need" has two parts:

The detainee's condition must be such that a failure to treat can be expected to lead to unnecessary suffering, injury, or death.  *Colburn II*, 946 F.2d at 1023.  Additionally, the condition must be one that has been diagnosed by a physician as requiring treatment, or, one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention. *Colburn II*, 946 F.2d at 1023.

*Hare v. City of Corinth*, 814 F.Supp. 1312, 1319-20 (N.D. Miss. 1993).

The evidence before the Court shows that when Wamble first requested an ambulance he would not tell anyone why.  However, both the Jail Administrator and a nurse came to see him in an attempt to assess his needs.  Wamble refused to be

-35-

evaluated by the nurse. Despite his refusal, paramedics were called to the facility in an attempt to ascertain if Wamble had any medical needs. Within hours of his arrest, Wamble had been visited by a nurse, visited by paramedics, admitted to the hospital and released. Wamble did not suffer any serious injury and walked out of the hospital on his own. As there is an absence of any record evidence which would support Wamble's claim of a deliberately indifferent delay of medical attention which resulted from a policy or procedure of Jones County, Mississippi, the County is subject to dismissal of such claim as asserted against it. *See Celotex v. Catrett*, 477 U.S. at 325,; *See also Estelle v. Gamble*, 429 U.S. 97, 105-107, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976), and *Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir.1993); *e.g., Jennings v. Natrona County Detention Center Medical Facility*, 1999 WL 248634, *4 (10th Cir. 1999); **Spicer v. Collins**, 9 F.Supp.2d 673, 682 (E.D. Tex.1998); *Thompson v. Hamilton*, 127 F.3d. 1109 (10th Cir. 1997).

### Claims Against Sheriff Alex Hodge Individually

It is black letter law in this Circuit that "[t]o state a cause of action under § 1983, a plaintiff must allege facts reflecting the defendants' participation in the alleged wrong, specifying the personal involvement of each defendant." *Jolly v. Klein*, 923 F.Supp. 931, 943 (S.D. Tex. 1996) (citing *Murphy v. Kellar*, 950 F.2d 290, 292 (5th Cir. 1992); *Jacquez v. Procunier*, 801 F.2d 789, 793 (5th Cir. 1986)). In this action, Wamble does not allege any personal involvement of Hodge which would entitle him to recover anything from Hodge in his individual capacity. It is undisputed that Sheriff Alex Hodge

was not personally involved in the events in issue in this case.

Hodge was not personally involved in the arrest, search or booking of Wamble. Likewise, there is no record evidence to suggest he failed to supervise or train individuals so as to result Wamble suffering a constitutional harm from such failure to train or supervise. Furthermore, as discussed above, Sheriff Hodge enacted polices that were constitutionally adequate. Accordingly, he is entitled to dismissal, in his individual capacity, as a matter of law.

## PUNITIVE DAMAGES

Under federal law, the state and its political subdivisions cannot be held liable for punitive damages for allegations asserted pursuant to 42 U.S.C. § 1983. As established by the United States Supreme Court in the landmark decision of *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1980), political subdivisions, such as Jones County, Mississippi, are absolutely immune from punitive damages liability under claims asserted pursuant to 42 U.S.C. § 1983. Likewise, the United States Court of Appeals for the Fifth Circuit has, afforded the state or its political subdivisions immunity from punitive damages liability under Title 42 U.S.C. § 1983. *See Davis v. West Community Hospital*, 755 F.2d 455, 467 (5th Cir. 1985). *See also Brooks v. Miller*, 620 F. Supp. 957, 963 (N.D. Miss. 1985) (". . . [D]efendant City's motion for summary judgment as to plaintiff's claims for punitive damages under Section 1983 is well taken and should be granted since municipalities are immune from punitive damages under Section 1983.").

IT IS THEREFORE ORDERED AND ADJUDGED that the Motion to Dismiss

**[#66]** filed on behalf of defendants Mississippi Department of Public Safety, the

Mississippi Highway Safety Patrol, and Jerry Merrill in his official capacity, and the

Motion for Summary Judgment filed on behalf of Jerry Merrill, in his individual capacity

**[#68]**, and the Motion for Summary Judgment filed on behalf of Jones County,

Mississippi and Sheriff Alex Hodge **[#64]** are Granted and the Plaintiff's Complaint is

dismissed without prejudice as to defendants Mississippi Department of Public Safety,

the Mississippi Highway Safety Patrol, and Jerry Merrill in his official capacity and with

prejudice as to Jerry Merrill in his individual capacity and as to Jones County,

Mississippi and Sheriff Alex Hodge in his official and individual capacities and that all

other motions are denied as moot. A separate judgment shall be entered herein in

accordance with Rule 58, Federal Rules of Civil Procedure.

      SO ORDERED AND ADJUDGED, this the 8th day of June, 2012.

*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE